UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

LUIS MENENDEZ, ET AL

VERSUS

GREY WOLF DRILLING
COMPANY, L.P., ET AL

CIVIL ACTION

NO. 08-297-BAJ-SCR

**RULING**

This matter is before the Court on a motion by defendant, Anadarko Petroleum Corporation ("Anadarko"), for summary judgment (doc. 32). No opposition has been filed. Jurisdiction is based on 28 U.S.C. § 1332.

Plaintiffs, Luis and Pamela Menendez,[1] seek damages arising out of an accident in which a truck driven by Luis Menendez overturned. At the time of the accident, Luis Menendez was employed by Stallion Heavy Haulers, L.P., as a licensed commercial truck driver. He was driving a truck owned by his employer, which had been subcontracted to move a land-based drilling rig owned by Precision Drilling Oilfield Services Corporation (the successor to Grey Wolf Drilling Company, L.P.).[2]

Plaintiffs allege that employees of Anadarko and Grey Wolf Drilling Company improperly loaded the truck, causing it to overturn when the load shifted during transport. Defendants, Grey Wolf Drilling Company, L.P.; Grey Wolf, L.L.C.; and

---

[1] Plaintiff, Pamela Menendez, is married to Luis Hernandez and has asserted a claim for loss of consortium.

[2] For purposes of simplicity, defendant, Precision Drilling Oilfield Services Corporation/ Grey Wolf Drilling Company, L.P., shall be referenced herein as Grey Wolf Drilling Company, L.P.

Grey Wolf Holdings Company, have been dismissed and plaintiff's only remedy against his employer is through workers' compensation benefits. Thus, Anadarko is the sole defendant remaining in this matter.

Pursuant to Local Rule 56.1, Anadarko has set forth a statement of facts which it claims are material to the motion before the Court. Because plaintiffs have not controverted those facts pursuant to Local Rule 56.2, Anadarko's statement of facts is deemed admitted for purposes of the motion for summary judgment.[3] Those facts are as follows:[4]

1. Luis Menendez ("Menendez") drove to the rig-down location three days before the accident, after receiving a call from a Stallion dispatcher (Chad Meyers).

2. Meyers told Menendez to get a stretch float/trailer from the Stallion yard and drive to the rig location in Texas.

3. Menendez claims that he asked Meyers to "check" with Stallion about using the stretch float/trailer and shortly thereafter Meyers told Menendez that he (Meyers) had asked Stallions terminal manager (Darryl Miller) about the stretch float/trailer and Miller said to use it.

4. When Menendez arrived at the location, the Stallion truck supervisor (Glenn Clements) was working at the rig-down site, and a Stallion truck pusher (Terry Leger) was working at the rig-up site.

5. The day before his accident, Menendez personally spoke to Stallion's supervisory employees on site and the Grey Wolf toolpusher at the location

---

[3] LR 56.2 provides:
> Each copy of the papers opposing a motion for summary judgment shall include a separate, short and concise statement of the material facts as to which there exists a genuine issue to be tried. All material facts set forth in the statement required to be served by the moving party will be deemed admitted, for purposes of the motion, unless controverted as required by this rule.

[4] Facts not material to the present ruling and conclusions of law are not repeated herein.

regarding the load, but Menendez's supervisor told him to proceed with the move.

6. Menendez admits that he could have refused to drive the truck/trailer if he thought the load was unsafe.

7. Menendez does not remember any Andarko representative instructing him to proceed with the load and no Andarko employee told Menendez or Grey Wolf Drilling Company how to load the truck/trailer.

8. Stallion cranes and crane operators were employed to load the rig components onto the Stallion trucks.

9. Grey Wolf employees bound the chains down while Menendez stood on the ground and told them what to do.

10. Menendez then added additional chains to secure the load.

11. The Stallion truck pusher ultimately was in charge of Stallion's operations and employees.

12. Stallion determined the type of equipment to be sent to the job - - including the truck/trailer.

(Doc. 32-4).

## LAW AND DISCUSSION

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(a).

In determining whether the movant is entitled to summary judgment, the Court views facts in the light most favorable to the non-movant and draws all reasonable inferences in the non-movant's favor. *Coleman v. Houston Independent School District*, 113, F.3d 528 (5th Cir. 1997). After a proper motion for summary judgment

is made, the non-movant must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2411, 91 L.Ed.2d 202 (1986). The non-movant's burden, however, is not satisfied by some metaphysical doubt as to the material facts, or by conclusory allegations, unsubstantiated assertions or a scintilla of evidence. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). Summary judgment is appropriate if the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp. V. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Because the Court's subject matter jurisdiction is based on diversity jurisdiction, Louisiana substantive law applies. See *Erie R.R. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). "Questions of Louisiana law are resolved 'the way the Louisiana Supreme Court would interpret the statute based on precedent, legislation, and relevant commentary.'" *Molden v. Georgia Gulf Corp.*, 465 F.Supp.2d 606, 610 (M.D.La. 2006) (quoting *Occidental Chemical Corp. V. Elliott Turbomachinery Co., Inc.*, 84 F.3d 172, 175 (5th Cir. 1996)).

Plaintiffs' claims against Anadarko are grounded entirely in negligence (petition, ¶ 18). Therefore, plaintiffs seek to assert claims against Anadarko under Article 2315 of the Louisiana Civil Code, which provides that "[e]very act whatever of man that causes damage to another obliges him by whose fault it happened to repair it." The Supreme Court of Louisiana has described the appropriate negligence analysis as follows:

> Louisiana courts have adopted a duty-risk analysis in determining whether to impose liability under La.Civ. Code art. 2315. In order for liability to attach under a duty-risk analysis, a plaintiff must prove five separate elements: (1) the defendant had a duty to conform his or her conduct to a specific standard of care (the duty element); (2) the defendant failed to conform his or her conduct to the appropriate standard of care (the breach of duty element); (3) the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact element); (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of protection element); and (5) actual damages (the damage element).

*Pinsonneart v. Merchants & Farmers Bank & Trust*, 816 So.2d 270, 275-76 (La.2002). "A negative answer to any of the elements in the Duty/Risk analysis prompts a no-liability determination." *Joseph v. Dickerson*, 754 So.2d 912, 916 (La.2000).

> A threshold issue in any negligence action is whether the defendant owed the plaintiff a duty. Whether a duty is owed is a question of law. In deciding whether to impose a duty in a particular case, the court must make a policy decision in light of the unique facts and circumstances presented. The inquiry is whether the plaintiff has any law (statutory, jurisprudential, or arising from general principles of fault) to support the claim that the defendant owed him a duty.

*Lemann v. Essen Lane Daiquiris, Inc.*, 923 So.2d 627, 633 (La.2006) (internal citations omitted).

The undisputed facts establish: (1) that employees of Stallion Heavy Haulers, L.P. told Menendez which type of truck to use for the load (Undisputed Facts, ¶¶ 2, 3, 12); (2) that the load was placed on the truck by cranes owned by Menendez's

5

employer and operated by employees of the same company (*Id.*, at ¶ 8); (3) that the load was secured by Menendez and employees of Grey Wolf Drilling Company, L.P. (*Id.*, at ¶¶ 9, 10); and (4) that those employees securing the load acted under the supervision of Menendez, without input from any employee of Andarko (*Id.*, at ¶¶ 7, 9). Therefore, Anadarko has set forth undisputed facts to support its assertion that it owed plaintiff no duty to assure that the trailer was properly loaded before plaintiff drove it off the rig-down site. Accordingly, plaintiff bears the burden of setting forth specific facts to establish that Anadarko owed him such a duty.

Plaintiff, having filed no opposition to the motion, has failed to satisfy that burden.

## CONCLUSION

For the foregoing reason, the motion by defendant, Anadarko Petroleum Corporation, for summary judgment (doc. 32) is **GRANTED**, and judgment shall be rendered in favor of defendant and against plaintiffs, dismissing this action with prejudice.

Baton Rouge, Louisiana, May 2, 2011.

_____
BRIAN A. JACKSON
UNITED STATES DISTRICT JUDGE
MIDDLE DISTRICT OF LOUISIANA